## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-61731-Civ-COOKE/TURNOFF

CYNTHIA STUBBS,

     Plaintiff,

vs.

FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES,

     Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CASE is before me upon Defendant Florida Department of Highway Safety and Motor Vehicles' Motion for Summary Judgment ("MSJ") (ECF No. 38). Plaintiff filed her Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 57), and Defendant submitted its Reply in Support of Motion for Summary Judgment (ECF No. 67). Therefore, the MSJ has been fully briefed and is ripe for adjudication. I have reviewed the MSJ and accompanying attachments, the Response and Reply thereto, Defendant's Statement of Undisputed Material Facts (ECF No. 39), Plaintiff's Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (ECF No. 58), the record, the relevant legal authorities, and am otherwise duly advised in the premises. For the reasons provided herein, Defendant's MSJ is granted.

### I.    BACKGROUND

This is an action to recover damages for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq.* Plaintiff, Cynthia Stubbs ("Plaintiff" or "Ms. Stubbs"), claims Defendant, Florida Department of Highway Safety and Motor Vehicles

("Defendant" or "DHSMV"), terminated her employment on November 10, 2010, in retaliation for making a complaint against her co-worker due to a racially discriminatory remark said on June 2, 2010. The following facts are undisputed unless otherwise noted.

Ms. Stubbs began her employment with the DHSMV as a Driver's License Examiner on September 22, 2003. (Stubbs Dep. 18, Apr. 12, 2012, ECF No. 40-1). She rotated between several office locations including Sunny Isles Beach, Bunch Park, County Line Road, and Opa Locka. (*Id.* at 20). In this position, Ms. Stubbs was responsible for providing customer service to those seeking driver's licenses and state identification, and was bound by DHSMV policies. (*Id.* at 21, 27).

Between January 2005 and May 2010, Ms. Stubbs was twice suspended for 24-hour/3-day periods due to violations of DHSMV policy and exhibiting behavior unbecoming of a public employee. (*Id.* at 23, 40, 43-44, Exs. 1-2). During this period, Ms. Stubbs also received two written reprimands and an oral reprimand. (*Id.* at 27, 32). These reprimands and suspensions followed incidents of loud, verbal confrontations with co-workers in the presence of customers, ridiculing and/or mistreating customers, and being absent without authorized leave. (*Id.* at 21, 27, 40).

The incident giving rise to Plaintiff's claim of retaliation occurred on June 2, 2010 between Plaintiff and her co-worker, Debra Horvath ("Ms. Horvath"). (Stubbs Dep. 48). A customer missed his number being called and approached Ms. Horvath for assistance. (*Id.*). Ms. Horvath initially ask Cassandra McMurray ("Ms. McMurray"), another of Ms. Stubbs' co-workers to assist the customer, but Ms. McMurray refused although the customer was originally in Ms. McMurray's line and assigned to her. (*Id.* at 47-48). Having no success with Ms. McMurray, Ms. Horvath then approached Ms. Stubbs demanding that she serve the customer,

and slammed the numbered ticket on Ms. Stubbs' desk.  (*Id.*).  Ms. Stubbs questioned why she,

rather than Ms. McMurray should assist the customer when Ms. Horvath responded, "All I have

to do is stay white until I die, and you're going to stay black until you die." [1]  (*Id.* at 48, Ex. 4).

Mr. Horvath followed up, "and because you're black you can't tell me what to do." (*Id.* at 48).[2]

     Ms. Stubbs resisted responding to Ms. Horvath at that moment and continued to assist the

customer whom she was helping prior to the interaction with Ms. Horvath.  Upon completion,

Ms. Stubbs went to her supervisor, Sharon Sanchez ("Ms. Sanchez"), who overheard and

observed the exchange because she was standing nearby.  (*Id.* at 48-49).  Ms. Stubbs asked Ms.

Sanchez if she heard what Ms. Horvath said, and Ms. Sanchez admitted to only hearing the

initial portion regarding Ms. Horvath needing to only stay white until she dies.  (*Id.*)  Ms. Stubbs

went into Ms. Sanchez's office where she was upset and crying.  Ms. Sanchez said that she

would speak to Ms. Horvath, and in doing so, Ms. Stubbs overheard Ms. Sanchez laughing with

Ms. Horvath about the incident and telling Ms. Horvath that she "had her back."[3] (*Id.*). Ms.

Sanchez then asked Ms. Horvath to come into her office with Ms. Stubbs where a loud exchange

---

[1] DHSMV's account of the incident varies.  DHSMV contends that Ms. Horvath initially approached Ms. Stubbs to assist the customer because Ms. Stubbs was the closest available examiner in accordance with DHSMV procedure.  Ms. Stubbs responded that the customer was not her responsibility because according to the "Q-matic screen," the customer was originally assigned to another Driver's License Examiner, and should be sent to that person for assistance.  Following a verbal exchange, Ms. Horvath made the comment, "All I have to do is stay white and die."  *See* Def.'s Statement of Undisputed Material Facts ¶ 6.  Defendant also notes that there is a dispute as to whether Ms. Horvath also said to Ms. Stubbs, "and you're going to stay black until you die," asserting that no other witness heard this comment and Ms. Horvath, while admitting that she made the "white" comment, denied making the "black" comment. *Id.* n.2; Stubbs Dep., Ex. 4; Horvath Dep. 33.

[2] Ms. Stubbs recounts another incident in which Ms. Horvath commented on a picture of Ms. Stubbs' daughter-in-law with a racially incendiary remark geared toward Hispanics.  Ms. Stubbs reported the incident to Ms. Arabi, the Fields Services Manager, but no action was taken.  *See* Stubbs Dep. 55-57.

[3] Plaintiff reports that Ms. Sanchez and Ms. Horvath were good friends and referred to each as "bones." Stubbs Dep. 48-49.

ensued.[4]  (Stubbs Dep. 48-50).  The discussion became so audible that Elizabeth Arabi ("Ms. Arabi"), the Field Services Manager, and another manager, entered Ms. Sanchez's office to quiet them down.[5]  (*Id.* at 50; Sanchez Dep. 25, Apr. 23, 2012, ECF No. 40-6).  Ms. Stubbs, Ms. Horvath, and other witnesses completed "Observation Forms" detailing their accounts of the incident.  (Stubbs Dep. 53).

Because Ms. Stubbs and Defendant considered her Observation Form an internal complaint of racial discrimination, (*id.*), the Office of Inspector General initiated an investigation according to DHSMV anti-discrimination policy and rules and operational policies.  (*Id.* 53, 60; Lambert Dep. 37-38, May 8, 2012, ECF No. 40-8; Sanchez Dep. 13).  John Dalton ("Mr. Dalton"), the investigator from Tallahassee assigned to investigate Ms. Stubbs' complaint, secured sworn statements from all witnesses, which were provided to Ms. Stubbs.  (Stubbs Dep. 62).  Ms. Stubbs denies that Mr. Dalton conducted an independent investigation.  According to Ms. Stubbs, Mr. Dalton was close to Ms. Sanchez, who has described Mr. Dalton as being "like a brother," and who would never take action against Ms. Sanchez or anyone in her protection.  Pl.'s Statement of Undisputed Material Facts ¶ 22.

When the investigation concluded, a disciplinary staffing was conducted for Ms. Stubbs and Ms. Horvath.  (Lambert Dep. 38-40).  Convened in the disciplinary staffing were the Director of Motor Services or her deputies, an attorney from the general counsel's office, and members from the Employee Relations Department.  (*Id.*).  The staffing did not include Ms. Sanchez, Ms. Arabi, or Mr. Dalton.  It was decided that both Ms. Stubbs and Ms. Horvath would

---

[4] DHSMV's variation is that Ms. Sanchez, in her office, overheard the conversation between Ms. Stubbs and Ms. Horvath and immediately brought them both into her office "where it became loud."  *See* Def.'s Statement of Undisputed Material Facts ¶ 6.

[5] According to Defendant, Ms. Arabi entered the office to have Ms. Stubbs lower her voice only.  *See* Def.'s Statement of Undisputed Material Facts ¶ 6.

be punished for their behavior on June 2, 2010.[6]  (*Id.*).  Ms. Sanchez, who was not involved in the disciplinary decisions, was not aware of the decision to discipline either Ms. Horvath or Ms. Stubbs until after the discipline was issued.  (Sanchez Dep. 35-36).  Ms. Horvath, who had been an employee of DHSMV for more than ten years at that time and did not have any prior disciplinary actions, was suspended for a 24-hour/3-day period, (Horvath Dep. 31, 34, Apr. 13, 2012).

Prior to Ms. Stubbs' termination, a pre-determination conference was conducted with Diana Maus ("Ms. Maus), Chief of Staff, Motorist Services, on October 20, 2010.  (Stubbs Dep. 74, Ex. 3).  Ms. Stubbs was invited, but did not provide any additional information that would change the determination of the DHSMV, which was made by officials in Tallahassee.  (Stubbs Dep. 70).  Therefore, on November 10, 2010, Ms. Stubbs was terminated from her position as Driver's License Examiner with the Defendant based upon her violation of four separate DHSMV policies, which constituted conduct unbecoming a public employee.  (Stubbs Dep. 68-70, Ex. 3).  Plaintiff vigorously denies that she violated any of the indentified policies or that her conduct was unbecoming. (Pl.'s Statement of Undisputed Facts ¶ 12).  Sandra Lambert, the Director of the Division of Driver Services, signed Ms. Stubbs' termination letter, but never ascertained whether Ms. Stubbs was black.  (Lambert Dep. 13, 22).

Following Ms. Stubbs' termination, she filed a complaint with the EEOC, and a right to sue letter was issued on May 31, 2011.  (ECF No. 15).  On August 4, 2011, Plaintiff filed her Complaint against Defendant Florida Department of Highway Safety and Motor Vehicles

---

[6] Plaintiff contests that Ms. Horvath was disciplined for the racial remark she made, as opposed to being disciplined simply for "loud talking in the supervisor's office."  Pl.'s Statement of Undisputed Facts ¶ 9. Ms. Horvath testified that she was disciplined for exhibiting conduct unbecoming of a public employee, but was not found to be loud in from of the pubic.  *See* Horvath Dep. 31-32.  Presumably, Ms. Horvath was punished for making the racially charged remark.

seeking compensatory and punitive damages for one count of retaliation under Title VII.[7] Following discovery, DHSMV filed the instant MSJ seeking judgment in its favor as a matter of law on the grounds that Plaintiff is unable to establish a prima facie case of retaliation under Title VII.

## II.   LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the

---

[7] Plaintiff dismissed her claim under the Florida Public Whistleblower Act, Fla. Stat. § 112.3187, which

mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358.  When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### III.    ANALYSIS

### A.    *Prima Facie* Case of Retaliation

"Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee because [s]he has opposed any practice made an unlawful employment practice ..., or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter." *Brush v. Sears Holdings Corp.*, 466 F. App'x. 781, 785 (11th Cir. 2012) (alterations in original).  To establish a prima facie case of discriminatory retaliation, plaintiff must show (1) she engaged in a statutorily protected activity, (2) she was adversely affected by an employment decision, and (3) there is a causal connection between the protected activity and the adverse employment action. *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006).  If the plaintiff meets all three elements it creates a presumption that "the adverse action was the product of an intent to retaliate." *Brown v. Alabama Dep't. of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  Assuming the plaintiff first establishes a prima facie case of discriminatory retaliation, then the burden of production shifts to the defendant to rebut the presumption, giving a legitimate, non-discriminatory reason for the

---

was Count II of her Complaint.  *See* Stip. Dismissal as to Count II Only, ECF No. 37.

adverse employment action.  *Id.* at 1181.  If this burden is met, the burden shifts back to the plaintiff to show that the defendant's proffered reason was merely a pretext to mask discriminatory actions.  *Id.* at 1181-82.

The first two elements of the prima facie case are not at issue here.  Defendant all but concedes that Plaintiff engaged in a "protected activity."[8]  *See* Def's. Mot Summ. J. Notwithstanding the implied concession, "Title VII protects individuals who have filed formal EEOC complaints and individuals who have filed informal complaints internally to their supervisors."  *Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005) (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002)).  Thus, Ms. Stubbs was engaged in a protected activity.  It is also a foregone conclusion that Ms. Stubbs suffered an adverse employment decision.  While action short of termination also may constitute an "adverse employment decision," certainly the termination of one's employment is such a decision.  *See Crawford v. Carroll*, 529 F. 3d 961, 970-71 (11th Cir. 2008).

Where Plaintiff and Defendant disagree is with respect to the third element, specifically whether there is a causal connection between the protected activity and the adverse employment action.  The Defendant argues that "there was no competent evidence to establish a causal connection between the two" and the Plaintiff contends that there was certainly a causal

---

[8]  Although Defendant states, "Assuming, *arguendo*, plaintiff has properly asserted a claim for retaliation," (Def.'s Mot. Summ. J. at 1, 3), Defendant does not assert or brief explicitly the argument that Ms. Stubbs was not engaged in a protected activity when she reported to her supervisor a racially charged comment made to her by her co-worker. Generally, a "litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him."  *Phillips v. Hillcrest Medical Ctr.*, 244 F.3d 790, 800 (10th Cir. 2001) (internal quotation omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal quotation omitted)).

connection. *See* Def.'s Mot. Summ. J. at 3; *See* Pl.'s Resp. at 6.

***Causal Connection***

Plaintiff fails to establish a causal connection between her complaint of racial discrimination on June 2, 2010 and her termination on November 10, 2010. In order to establish a causal connection, a plaintiff must show that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman,* 526 F.3d 1370, 1376 (11th Cir. 2008) (internal quotation marks omitted). A close temporal proximity between the protected activity and adverse action may be sufficient to establish a causal connection. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). On the other hand, "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* (holding that a three-month gap between the plaintiff's complaints of sexual harassment and employment termination, without more, did not establish causation). Recognizing that the five-month interim between Plaintiff's complaint and her termination militates against a causal connection, Plaintiff argues that the causal connection is demonstrated through a theory called "cat's paw."

The "cat's paw" theory is recognized in circumstances "in which the forbidden motive of a subordinate employee can be imputed to the employer because, under the circumstances of the case, the employer simply acted as the 'cat's paw' of the subordinate." *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997); *see also Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) ("when the harasser in a Title VII case is not the decisionmaker, if the plaintiff shows that the harasser employed the decisionmaker as her 'cat's

paw'-i.e., the decisionmaker acted in accordance with the harasser's decision without herself evaluating the employee's situation.").   In a "cat's paw" situation, the causal link between the plaintiff's protected activities and her subsequent termination, would remain intact.  *Llampallas*, 163 F.3d at 1249.  Plaintiff argues that Defendant's justification for her termination must be simple pretext to ratify the conclusion of Mr. Dalton because Plaintiff did not behave inconsistent with DHSMV policy on June 2, 2010, and Ms. Lambert, the signatory on the termination letter, was not aware that Ms. Stubbs was black, and therefore, could not have done an independent investigation.

In a summary judgment context, an employer's argument that an employee was fired for violating a work rule is arguably "pretextual when a plaintiff submits evidence (1) that she did not violate the cited work rule or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated."   *Bush v. Houston County Comm'n*, 414 F. App'x 264, 265 (11th Cir. 2011).  Here, Plaintiff argues both that she did not violate Defendant's policies, but if she did, Ms. Horvath was not similarly punished. Plaintiff insists that she completed assisting the customer in front of her and then reported the incident to her supervisor.  She also disputes that she was screaming in the presence of customers and co-workers, but was merely having a conversation, albeit loudly, in her supervisor's office. In opposition, Defendant argues that Plaintiff cannot escape the fact that she did not assist the customer whom she was asked to assist, and caused such a raucous while in her supervisor's office that other managers had to intervene to ask that the noise be quieted.  While it may be considered a factual dispute whether Ms. Stubbs indeed violated policy on June 2, 2010, it is not a dispute of a material fact.  "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct. An

employer 'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Damon*, 196 F.3d at 1363 n.3 (quoting *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir.1998)).

Also, it is undisputed that the individuals rendering the decision to terminate Ms. Stubbs were those empanelled in the disciplinary staffing and pre-determination conference. Ms. Horvath, Ms. Sanchez, Ms. Arabi, and Mr. Dalton were not participants in the final termination decision. Although Ms. Lambert signed the termination letter, the evidence demonstrates that there were several decision makers involved in the disciplinary staffing and pre-determination conference, not including the interested parties, on whom Ms. Lambert could rely. Therefore, Ms. Lambert's lack of awareness that Ms. Stubbs is black does not establish a "cat's paw" connection. Because there are additional layers of disinterested administrators involved in Ms. Stubbs termination decision, any alleged racial animus on the parts of Ms. Horvath, Ms. Sanchez, Ms. Arabi, and Mr. Dalton cannot be attributed to the final decision makers absent any evidence of historically racial discrimination in their decisions, or any evidence connecting these independent bodies to those involved in the incident or the investigation of same. *See Jones*, 151 F.3d at 1323-24 (finding plaintiff failed to establish a prima face case of discriminatory discipline where the final decision to terminate plaintiff's employment was not made by the interested parties, but was the decision of the personnel committee, and where there was no evidence that the personnel committee had a history of racial discrimination in its decisions); *see also Willis*, 118 F.3d at 547–48; *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269-70 (11th Cir. 2001).

B.      **Legitimate, Non-Pretextual Reasons for Termination**

Further, and significant to the instant matter, the evidence demonstrates that Plaintiff was not terminated solely for her behavior on June 2, 2010, but also for the numerous prior reprimands, including two 24-hour/3-day suspensions, two written reprimands, and an oral reprimand.  Other work infractions committed prior to the protected activity that weigh into the termination decision have been held to demonstrate legitimate, nondiscriminatory reasons for the termination.  *See Jeudy v. Attorney General, Dep't of Justice*, No. 11-15838, 2012 WL 3031229 (11th Cir. July 26, 2012) (upholding grant of summary judgment to employer where plaintiff was terminated for committing two infractions during her probationary period).  The evidence shows that both participants in the June 2, 2010 incident were reprimanded.  Ms. Horvath, who had no prior disciplinary actions in her employment file for over ten years of service, received a 24-hour/3-day suspension for her behavior.  Ms. Stubbs, who had five previous infractions in the same amount of years in her employment file, was terminated.[9]  Finding that both employees behaved in contravention of DHSMV policy, they were both disciplined.  Ms. Stubbs, however, was a repeat offender.  Given the attenuated causal connection between the protected activity and the adverse employment decision, I believe that the impetus prompting termination was not the exercise of Ms. Stubbs' rights under Title VII, but her pattern of noncompliance with the policies of DHSMV.

---

[9] I sympathize that the circumstances leading to Plaintiff's termination were spurred by a racially charged, inappropriate, and unprofessional remark.  The comment, including or excluding the "and you're going to stay black until you die" clause, is unbecoming of any employee in the year 2012.  However, the evidence shows that Plaintiff was skating on the proverbial "thin-ice" – this not being her first time at the "disciplinary action rodeo."  In situations such as these, there is nothing in Title VII that prevents an employer from terminating a demonstrably problematic employee.

## IV.   CONCLUSION

Having reviewed the arguments and the record, I find that Plaintiff fails to establish a prima facie case of retaliation because she cannot legally establish that the adverse employment action taken against her was causally connected to her statutorily protected activity.  Therefore, summary judgment in favor of the Defendant is appropriate.

Accordingly, it is **ORDERED and ADJUDGED** that:

1. Defendant Florida Department of Highway Safety and Motor Vehicles' Motion for Summary Judgment (ECF No. 38) is **GRANTED**

2. The Plaintiff's Complaint is **DISMISSED**.

3. The Clerk is directed to **CLOSE** this case.

4. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida, this 17th day of October 2012.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*